UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                :
ROBERT M. HALKITIS,                                             :
                                                                :
                                    Plaintiff,                   :
                                                                :               19-CV-11753 (JMF)
                    -v-                                          :
                                                                :               <u>OPINION AND ORDER</u>
NEW YORK CITY DEPARTMENT OF EDUCATION                           :
et al.                                                          :
                                                                :
                                    Defendants.                 :
                                                                :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

  Plaintiff Robert M. Halkitis brings employment discrimination claims against his former

employer, the New York City Department of Education (the "DOE"), and a handful of his

former supervisors and coworkers.[1]  Halkitis's principal claims — brought pursuant to Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.; the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.; and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. — are for discrimination on the basis of sex,

gender, gender expression, and sexual orientation; retaliation; and hostile work environment.

Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary

judgment.  For the reasons that follow, their motion is GRANTED.

---

[1]  The individual Defendants are Superintendent Donalda Chumney, Principal Jennifer
Rehn-Losquardo, Assistant Principals Lindsay Oakes, Lisa Stefanick and Courtney Delaney, and
Office Clerk Yasmeen Gutic (whose name is spelled "Jasmina" in Defendants' submissions).

## BACKGROUND

The following facts, drawn from the Complaint and admissible materials submitted by the parties in connection with Defendants' motion, are either undisputed or described in the light most favorable to Halkitis.  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Halkitis, a gay man, was hired as a special education social studies teacher at the Robert F. Wagner Middle School, M.S. 167, in the Fall of 2017.  ECF No. 1 ("Compl."), ¶ 37; ECF No. 56 ("Halkitis Decl."), ¶ 2.  Consistent with New York law, he was hired subject to a three-year probationary period.  ECF No. 49 ("Defs.' Mem."), at 2.  During his first year — the 2017-2018 school year — Principal Rehn-Losquardo and Assistant Principal Delaney observed and evaluated him four times.  ECF No. 50 ("Defs.' Rule 56.1 Stmt."), ¶ 2.  They rated him as "effective" and listed "additional evaluator notes" or suggestions for improvement.  *Id.*  In the Fall of 2018, Halkitis was reassigned to a position as a general education social studies teacher.  ECF No. 48-2 ("Halkitis Tr."), at 147.  During that school year, Principal Rehn-Losquardo and Assistant Principal Oakes observed him five times.  Defs.' Rule 56.1 Stmt. ¶ 4.  This year, however, they gave him "developing" and "ineffective" performance evaluations.  *Id.* ¶ 5.  In addition, the administrators made specific recommendations for Halkitis to improve his classroom performance, which they assert he did not follow.  Defs.' Mem. 2-3.

Halkitis's claims are based primarily on two incidents that occurred during the 2018-2019 school year.  First, on November 1, 2018, a student in Halkitis's class referred to him as a "fucking faggot."  Compl. ¶ 39.  Halkitis reported the incident to Stefanick, the eighth-grade assistant principal.  Halkitis Tr. 48-49.  In response, the school contacted the student's parents and suspended the student from school for two days.  *Id.* at 57.  Halkitis, however, disagreed with this course of action; in his opinion, the school should have facilitated a conversation

between him and the student and worked to educate the student about why the comment was so hurtful.  *Id*. at 58.  Second, on June 24, 2019 (as discussed below, *after* Halkitis was informed that his employment was being terminated), a student notified Halkitis that there was graffiti on the bulletin board of his classroom that read "Jacky's a faggot."  Compl. ¶ 69; Defs.' Rule 56.1 Stmt. ¶ 13.  Halkitis was not known as "Jacky," and he does not know who wrote the graffiti or to whom it referred.  Defs.' Rule 56.1 Stmt. ¶ 14.  Halkitis reported the graffiti to school administrators, who called the New York City Police Department.  Complaint ¶¶ 73-74.  Officers took the report, but they did not interview Halkitis.  *Id*. ¶ 74.  When Halkitis contacted the police the next day at the precinct, they told him that school administrators had advised them not to interview him.  *Id*. ¶ 77.[2]

    In addition to the foregoing, Halkitis points to a few other incidents in support of his claims.  First, in 2017, he advised the school guidance counselor that he wanted to participate in the school's Gay Straight Alliance.  Halkitis Tr. 139.  The counselor initially expressed support, but she did not follow up with Halkitis about it.  *Id*. at 139-40.  Halkitis then emailed an assistant principal, who arranged a meeting with the guidance counselor, who stated that it had not been

---

[2]    Halkitis alleges a third incident in his Complaint: that, on May 31, 2019, Gutic, the school's office clerk, asked another male teacher if he was "getting his sweet on" with Halkitis because they sometimes left school together.  Compl. ¶¶ 46-52.  The sole evidence of this incident, however, is Halkitis's testimony about what the other teacher told him, *see* Halkitis Tr. 86-87, which is hearsay if offered to prove that Gutic actually made the statement.  (Gutic, for what it is worth, denies having made the statement.  ECF No. 48-11, at 101-2.)  In the absence of admissible evidence that Gutic made the statement, the Court may not, and does not, consider the allegation.  *See, e.g.*, *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (holding that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment").

her intention to exclude Halkitis and that he was welcome to participate whenever he wanted.  *Id*.
at 140-41.  Halkitis, however, declined to participate because "it left a bad taste in [his] mouth"
that they had not "reached out to [him] and asked for [his] advice or . . . [his] input of anything."
*Id*. at 142.  Second, Halkitis alleges that he complained to administrators about students in his
class who were harassing an LGBT classmate.  Compl. ¶¶ 53-68.  Halkitis felt that the school did
not do enough to stop the harassment.  *Id*. ¶¶ 58, 60.  Halkitis describes in detail one email that
he sent in the Spring of 2019, which prompted administrators to hold a special meeting with
Halkitis's homeroom advisory.  Halkitis Tr. 125-26.  During the meeting, students "stood up and
admitted what they did was wrong," and apologized to both the student and Halkitis for their
behavior; Halkitis described the meeting as "extremely emotional" and "very powerful."  *Id*. at
126-29.  Third, on another occasion, Halkitis received an email, purportedly from a student, that
said "suck it."  *Id*. at 196.  He forwarded it to Stefanick, who asked the technology teacher to
investigate.  *Id*.  The school determined that the email could not have come from the student
whose email address it appeared to come from, but was unable to determine who had sent it.  *Id*.
When pressed during his deposition, Halkitis said that there were "possibly other incidents, but
right now, that is what I remember."  *Id*. at 197.  In a declaration submitted in connection with
this motion, however, he cites a meeting in which he was spoken to, but not disciplined, for
allegedly referring to some students as "bad students"; and alleges several times, without
elaboration, that a student was "verbal[ly] abusive towards" him, "creating [an] unsafe
environment for all students."  Halkitis Decl. ¶ 23.

As noted, during the 2018-2019 school year, administrators gave Halkitis poor
evaluations.  *See* Defs.' Rule 56.1 Stmt. ¶ 5.  In addition, on February 28, 2019, Rehn-Losquardo
met with Halkitis to address an allegation that he had read notes from his observation report

aloud to students.  ECF No. 48-14.  After an investigation, which included interviews with eleven student witnesses, Rehn-Losquardo found the allegations to be substantiated and disciplined Halkitis by placing a letter in his file.  *Id*.  On June 18, 2019, Halkitis was informed that his probationary employment was being discontinued.  Compl. ¶ 90.  On June 25, 2019, Superintendent Chumney informed Halkitis that his discontinuance was being reviewed and invited him to submit a written response, ECF No. 48-5, which Halkitis did, ECF No. 48-7.  In his response, Halkitis explained that he "still [had] much to learn as [he] refine[d his] skills and abilities"; he made no reference to any discrimination or harassment.  *Id*.  On July 25, 2019, Chumney informed Halkitis that she had reviewed all documentation, including his written response, and that she had reaffirmed his discontinuance.  ECF No. 48-6.

Halkitis appealed his discontinuance and, on October 15, 2019, a hearing was held.  ECF No. 48-8.  A three-person committee of people not associated with the school reviewed the recommendation.  ECF No. 48-9, at 1.  Halkitis and Rehn-Losquardo presented evidence and argument, and Halkitis was able to question Rehn-Losquardo.  ECF No. 61 ("Pl.'s Rule 56.1 Stmt."), ¶ 9.  Rehn-Losquardo stated that, despite "weekly support . . . provided by the Principal, [Assistant Principal], a mentor and two coaches," "[t]eaching and learning simply did not take place in his class."  ECF No. 48-9, at 1.  Halkitis acknowledged that "[h]e did receive three warnings of possible denial," but "[h]e thought the Administration was telling him to improve in the areas mentioned in the observation reports, not in his entire teaching performance."  *Id*. at 2.  He also claimed that administrators "dropped the ball" by failing to follow through on helping him and that his "average rating of *developing* was insufficient to warrant a denial."  *Id*. at 2.  Notably, Halkitis did not make any allegations of discrimination or of a hostile work

environment during his hearing.  Defs.' Rule 56.1 Stmt. ¶ 10.[3]  The committee affirmed the

discontinuance.  *Id*. ¶ 11.  Halkitis was later hired by the DOE as a substitute teacher.  *Id*. ¶ 12.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

2012) (per curiam).  Such a dispute qualifies as genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment

against a party who will bear the ultimate burden of proof at trial, the movant's burden will be

satisfied if he can point to an absence of evidence to support an essential element of the

nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18

(2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315

F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in

---

[3]     Halkitis disputes this statement in his Local Rule 56.1 Statement, alleging that, at the
hearing, "he asserted that discrimination had occurred, and shared numerous experiences of
gender-based harassment during the hearing."  Pl.'s Rule 56.1 Stmt. ¶ 10.  Local Rule 56.1,
however, requires that "each statement controverting any statement of material fact, must be
followed by citation to evidence which would be admissible."  S.D.N.Y. L. Civ. R. 56.1(d).
Halkitis cites as support for his description of the hearing Paragraph 41 of his Declaration, *see*
ECF No. 56, but the Declaration contains only thirty-seven paragraphs, none of which supports
the allegation.  Nor has the Court identified any admissible evidence to support Halkitis's
statement.  Thus, Paragraph 10 of Defendants' Local Rule 56.1 Statement is deemed admitted.
*See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("Where there are no citations or
where the cited materials do not support the factual assertions in the Statements, the Court is free
to disregard the assertion." (cleaned up)); *see also Estate of Kennan v. Hoffman-Rosenfeld*, No.
16-CV-0149 (SFJ), 2019 WL 3416374, at *7 (E.D.N.Y. July 29, 2019).

the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed. *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."

*Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

As noted, Halkitis brings claims for hostile work environment, discrimination, and retaliation under Title VII, the NYSHRL, and the NYCHRL.  The Court will address each claim in turn, beginning with his federal claims.

## A.  Hostile Work Environment

To establish a hostile work environment claim under Title VII, a plaintiff "must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (internal quotation marks omitted).  More specifically, the conduct "must be severe or pervasive enough that a reasonable person would find it hostile or abusive, *and* the victim must subjectively perceive the work environment to be abusive."  *Id*. (emphasis added).  Importantly, "[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000).  Instead, the ultimate "test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of h[is] employment altered for the worse."  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (cleaned up).

Where discriminatory acts and remarks were made by a co-worker rather than a supervisor, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). This test has also been applied in the school setting to harassment by non-employees, such as students, "with the qualification that [courts also] . . . 'consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.'" *Id.* (quoting 29 C.F.R. § 1604.11(e)). In *Summa*, for example, the Second Circuit held that "the University and the head football coach had a high degree of control over the behavior of its student football players" and, therefore "apl[ied] the test for imputing harassment by co-workers." *Id.* Courts have done the same where, as here, a teacher has alleged harassment by high school students. *See, e.g.*, *Eubanks v. New York City Dep't of Educ.*, No. 18-CV-7877 (LJL) (SLC), 2021 WL 1110587, at *18-19 (S.D.N.Y. Feb. 3, 2021), *report and recommendation adopted,* 2021 WL 1105065 (S.D.N.Y. Mar. 23, 2021); *Peries v. New York City Bd. of Educ.*, No. 97-CV-7109 (ARR), 2001 WL 1328921, at *1, *5-6 (E.D.N.Y. Aug. 6, 2001).

Applying these standards here, the Court concludes that Halkitis's hostile work environment claim must be dismissed for two reasons. First, the incidents that Halkitis alleges — which took place over a span of months, if not years, and involved a host of perpetrators — are not "sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015); *see also Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010) (summary order) ("[The plaintiff's] allegations of episodic, isolated incidents of ethnically — or racially-motivated student-on-teacher harassment,

spread over the three years of her employment with the District, are not sufficiently severe or pervasive in character to constitute a hostile work environment."); *Karunakaran v. Borough of Manhattan Cmty. Coll.*, No. 18-CV-10723 (ER), 2021 WL 535490, at *1, *8 (Feb. 12, 2021) (finding that a few instances in which a student "became verbally and physically aggressive towards" the plaintiff did not "meet the threshold of severity or pervasiveness required for a hostile work environment claim" (internal quotation marks omitted)).

Second and in any event, any plausible harassment is not imputable to the DOE, Halkitis's former employer.  With one relatively innocuous exception (the failure to invite Halkitis to participate in the Gay Straight Alliance until he pressed the issue), the conduct of which Halkitis complains was committed by non-employees, primarily students.  Yet in each instance, the DOE not only provided a reasonable avenue for Halkitis to complain, but also actually took prompt remedial action: when a student called Halkitis a "faggot," the school contacted the student's parents and suspended the student, Halkitis Tr. 57; when Halkitis received an email, presumably from a student, that said "suck it," the school tried but failed to identify the perpetrator, *id*. at 196; when Halkitis discovered offensive graffiti on the bulletin board in his room, school administrators called the police, *id*. at 79; and when students in Halkitis's class bullied an LGBT student (conduct not even directed at Halkitis himself), the school convened a class-wide meeting that Halkitis himself described as "very powerful," *id.* at 126-29.  In short, Halkitis "presented no evidence that the administration failed to discipline the students" involved.  *Das*, 369 F. App'x at 190.  The fact that Halkitis believes the school could or should have taken different remedial action is irrelevant; Title VII does not mandate that an employer take any particular remedial action, let alone take the plaintiff's preferred remedial action.

In short, Halkitis's Title VII hostile work environment claim fails as a matter of law.

## B. Discrimination

Halkitis's Title VII discrimination claim is analyzed using the three-step, burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020).  Under that framework, Halkitis must first establish "a *prima facie* case of discrimination."  *Id.*  To do so, he must show that (1) he belonged to a protected class; (2) he was qualified for the position he sought; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See, e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014).  If he does so, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory . . . reason for the adverse action."  *DeMuth*, 819 F. App'x at 25.  "If the employer satisfies its burden, the plaintiff must then show that the reasons presented were a pretext for discrimination . . . ."  *Id.* (internal quotation marks omitted).

Here, Halkitis provides no evidence from which a reasonable juror could infer that his termination was because of discriminatory animus towards him.  The incidents about which Halkitis complains, as discussed above, were not perpetrated by school administrators or his evaluators, but rather by students or co-workers, and, as described above, the school responded reasonably to many, if not all, of them.  Even if Halkitis could establish an inference of discrimination, the school has put forward numerous non-discriminatory reasons for his termination, most significantly, his poor classroom evaluations.  While Halkitis and his expert, Bruce Levenberg, seek to discredit the teaching evaluations, arguing that Defendants "offer no explanation of how Plaintiff regressed so badly in the second year of teaching," ECF No. 59

("Pl.'s Opp'n"), at 5, which Levenberg asserts is "unusual," ECF No. 58 ¶ 41, a plaintiff "cannot raise an inference of discrimination through lack of personal knowledge," *Das*, 369 F. App'x at 190.  Halkitis fails to provide any evidence, circumstantial or direct, that his evaluations were unfair, relying instead on pure conjecture.  Significantly, "where a plaintiff can provide no circumstantial evidence that negative evaluations of his job performance were unfair or improperly issued, and all objective indications show fair evaluation procedures, there is no material issue of genuine fact to be tried and, and plaintiff's claim cannot survive summary judgment." *Brenner v. City of New York Dep't of Educ.*, 132 F. Supp. 3d 407, 418 (E.D.N.Y. 2015) (cleaned up).

On top of that, Halkitis's "disagreement with [his] employer's evaluation of [his] performance is insufficient to establish discriminatory intent because disagreements do not, as a matter of law or logic, mean that present poor performance reviews are unfounded." *Id.* (quoting *Ricks v. Conde Nast Publ'ns*, 6 F. App'x 74 (2d Cir. 2001) (summary order)).  In addition, he was evaluated by multiple administrators, and his appeal was denied by a committee of people not associated with the school or involved in the alleged harassment and discrimination.  The fact that multiple, unrelated evaluators shared the assessment of Plaintiff's shortcomings and ratified his discontinuance "undercuts [any] discriminatory inference." *Marseille v. Mount Sinai Health Sys., Inc.*, 18-CV-12136 (VEC), 2021 WL 3475620, at *8 (S.D.N.Y. Aug. 5, 2021); *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 259 (E.D.N.Y. 2012) ("A discriminatory inference can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance.").  In short, Plaintiff's claims of a handful of discriminatory incidents, not attributed to anyone involved in his termination, are not sufficient to show that the documented justifications for his termination are pretext.

Accordingly, Halkitis's Title VII discrimination claim fails as a matter of law as well.

**C. Retaliation**

Halkitis's Title VII retaliation claim is also subject to the *McDonnell Douglas* burden-shifting framework. *See DeMuth*, 819 F. App'x at 25. To establish a *prima facie* case of retaliation, Halkitis must establish that (1) he engaged in a protected activity of which defendants were aware; (2) he was subjected to an adverse employment action; and (3) a causal connection existed between the adverse employment action and his protected activity. *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020). If he can show a *prima facie* case for retaliation and the employer proffers an independent reason for the adverse employment action, Halkitis must then show that retaliation was a "but-for" cause of the employer's adverse action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015). But-for causation requires a plaintiff to prove that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Here, assuming for the sake of argument that Halkitis can demonstrate a causal connection between his allegedly protected activity, such as his complaints about a hostile work environment, and his termination or negative evaluations, Defendants have offered several non-discriminatory reasons for his termination, discussed above, and Halkitis has offered no evidence to permit a reasonable jury to conclude that his termination would not have occurred in the absence of the retaliatory motive. *See, e.g.*, *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 238 (2d Cir. 2019) (summary order) ("Defendants provided well-documented reasons for denying [the plaintiff's] tenure that are entirely unrelated to her complaints, and [the plaintiff] failed to raise a genuine dispute of fact that Defendants' proffered reasons were pretextual."). Indeed, Halkitis points to little more than the temporal proximity of his alleged

protected activity and his adverse employment actions.  Pl.'s Opp'n 9-10.  But while that may be sufficient to establish causation for purposes of a *prima facie* case, it is not enough to rebut a defendant's facially neutral reason for the termination.  *See Zann Kwan*, 737 F.3d at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.").

Thus, Halkitis's final federal claim, for retaliation, fails as a matter of law too.

## D.  NYSHRL and NYCHRL Claims

Having dismissed Halkitis's Title VII claims, the Court must decide whether to exercise supplemental jurisdiction over his claims under the NYSHRL and NYCHRL.  A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The statue does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.*; *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claims, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to . . . summary

judgment . . ., courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted) (citing cases)).

Until recently, courts in this district routinely decided NYSHRL hostile work environment, discrimination, and retaliation claims along with Title VII claims because the standards for each were the same. *See, e.g.*, *Williams v. New York City Dep't of Mental Hygiene*, 299 F. Supp. 3d 418, 429 (S.D.N.Y. 2018).  In August 2019, however, New York amended the NYSHRL "to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of the [NYSHRL] have been so construed." *McHenry v. Fox News Net., LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300).  Courts in this district have held that the amendment is not retroactive and accordingly that it applies only to actions that took place after its effective date, August 12, 2019.  *Id.* (citing cases).  Here, that means that the pre-amendment version of the NYSHRL applies to Halkitis's NYSHRL hostile work environment claims, as the conduct underlying those claims occurred during the 2018-2019 school year; thus, it would be inefficient, and risk inconsistency, to defer a decision on these claims to a state court.  Accordingly, they are dismissed.  Halkitis's retaliation and discrimination claims, on the other hand, are based in part on conduct that occurred after the date of amendment, so the amended version of the law may well apply.  Accordingly, the Court declines to exercise supplemental jurisdiction over those claims, finding that they, along with Halkitis's claims under the NYCHRL, are "best left to the courts of the State of New York." *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 93 (2d Cir. 2011) (summary order); *see also Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order); *Williams*, 299 F. Supp. 3d at 429.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment must be and is GRANTED.[4]  More specifically, Halkitis's claims under Title VII and his NYSHRL hostile work environment claims are dismissed with prejudice, while his NYSHRL claims of discrimination and retaliation and his NYCHRL claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is directed to terminate ECF No. 47, to enter judgment consistent with this Opinion and Order, and to close this case.

SO ORDERED.

Dated: February 9, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[4]     Because the Court grants Defendants' motion for summary judgment, it need not — and does not — reach the alternative request to preclude Mr. Levenberg's report and testimony.